IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RESERVE CAPITAL, LLC,              )
                                  )
            Plaintiff,            )
                                  )
      vs.                         )      No. 05 C 6556
                                  )
CLB DYNASTY TRUST 2002, et al.,   )
                                  )
            Defendants.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff Reserve Capital, LLC brought this action against CLB Dynasty Trust 2002,

Christopher Hawks, Trustee; PTH Dynasty Trust 2002, Christopher Hawks, Trustee; MTH

Dynasty Trust 2002, Christopher Hawks, Trustee; Gerald T. Halpin; Ogilvie Security Advisors

Corporation; Gentry Partners, Ltd.; Debra Hoag; The Capitol Financial Group, Inc.[1]; and R.

Randal Seal. Plaintiff's complaint includes allegations of breach of contract, conspiracy to

tortiously interfere with contract, and conversion, calling for damages, specific performance,

and/or attorney's fees. Defendant Halpin ("Halpin") now moves this court for dismissal for

lack of personal jurisdiction and/or improper venue. Defendants CLB Dynasty Trust 2002,

Christopher Hawks, Trustee; PTH Dynasty Trust 2002, Christopher Hawks, Trustee; and

MTH Dynasty Trust 2002, Christopher Hawks, Trustee ("Trusts") move this court for

dismissal for lack of personal jurisdiction and/or improper venue. Alternatively, the Trusts

petition this court to transfer venue to the District of New Jersey. And defendants Ogilvie

Security Advisors, Gentry Partners, Ltd., Debra Hoag, The Capitol Financial Group, Inc., and

R. Randal Seal ("venue defendants") move to transfer to the District of New Jersey, pursuant

to 28 U.S.C. § 1404(a). For the following reasons, we grant Halpin's motion to dismiss for lack

---

[1]The complaint incorrectly identifies this party as The Capital Financial Group, Inc.

of personal jurisdiction; grant the Trusts' motion to dismiss for lack of personal jurisdiction; and grant venue defendants' motion to transfer to the District of New Jersey. Plaintiff's complaint, as against Halpin and the Trusts, is dismissed without prejudice.

## BACKGROUND

This action is essentially a contract dispute regarding three contracts entered into by plaintiff, Reserve Capital, LLC, located in New Jersey, and Christopher Hawks, a resident of Wyoming, trustee for the three Trusts, located in Wyoming, for the sale of eighteen life insurance policies on the life of Helen Halpin. Gerald T. Halpin, a resident of Virginia, is "settlor" of all three Trusts. Each Trust held six of Mrs. Halpin's life insurance policies and each contracted to sell its six insurance policies for $2,766,667, for an aggregate purchase price of $8,300,000. Although the contracts of sale were signed on May 2, 2005, and June 2, 2005, the majority of the sale was never consummated.

According to the complaint, in January 2005, the Trusts authorized defendants Seal, in Virginia, and Hoag, in Illinois, to find a purchaser for the insurance policies and to assist in negotiations relating to the sale (am. cplt., ¶ 30). Either Seal or Hoag contacted broker Gary Brecka, president of Life Asset Group, LLC ("LAG"), located in Florida, to assist them in finding a purchaser for the policies (¶ 32). LAG conducted its search and found plaintiff, who agreed to enter into three contracts for all eighteen life insurance policies at a purchase price of $2,766,667 per Trust (¶ 34). Mr. Lian, sole member and manager of Reserve, prepared the contracts, entitled "Contract For Sale and Purchase of Life Insurance" (¶ 38). The MTH contract was entered into on May 2, 2005 (¶ 39). After Lian sent the CLB and PTH contracts to LAG, they were executed by Hawks and Lian on June 2, 2005 (¶¶ 40, 47, 49). In connection with the execution of the contracts, Hawks delivered Irrevocable Special Powers of Attorney and physical possession of the policies to Reserve (¶¶ 48, 50).

The parties dispute the length of the time plaintiff had to close (pay) on the CLB and PTH contracts before they terminated. The Trusts contend that plaintiff breached the contracts by failing to make timely payments. Therefore, Hawks placed "stop transfer instructions" on the policies, preventing plaintiff from transferring ownership of the policies. That, plaintiff asserts, prevented it from closing on the advanced negotiations it had entered into with Habersham Funding LLC ("Habersham"), and its wholly-owned entity, The Winterthur Company LLC ("Winterthur"), both located in Georgia. Plaintiff argues that the contracts intentionally omitted an outside date for payment,[2] "[b]ecause of the lengthy period of time that Reserve might need in finding an entity to resell the twelve life insurance policies to" (¶ 57). Therefore, plaintiff was not in breach of contract, and the Trusts, by placing the stop transfer instructions on the policies, themselves breached the contracts with plaintiff. Plaintiff asserts that the breaches of contract caused it to incur damages in the amount of $1,466,666 – the compensation it was to receive from the contracts with Habersham/Winterthur (¶¶ 76, 79).

Count II alleges that defendants Halpin, Ogilvie, Gentry, Capitol, Hoag and Seal conspired to tortiously interfere with plaintiff's rights in the CLB and PTH contracts by inducing the Trusts to materially breach the contracts as described above. Plaintiff contends that Halpin gave "specific instructions" to Hawks that the transfer of ownership of the CLB and PTH insurance policies was to be "blocked and obstructed" in order to "receive [a] higher purchase price or other valuable consideration"(¶ 91). That higher price, plaintiff asserts, was directly or indirectly paid by Coventry First, a Pennsylvania company with whom the Trusts

---

[2] The CLB and PTH contracts included a "Closing" provision, stating:
Closing shall occur upon satisfaction of all conditions set forth below provided that if SELLER is unable or otherwise fails to satisfy such conditions; (1) closing shall not occur; (2) any escrowed proceeds shall be returned to PURCHASER; (3) this Contract shall be null and void; and (4) SELLER shall have no rights to the Purchase Price or otherwise....
(Id., Ex. 1, ¶ 3).

subsequently negotiated the sale of the same CLB and PTH insurance policies. (*Id.*) Plaintiff contends that Halpin was "the man who personally directed and oversaw the conspiracy" (plf's response to venue defs' motion to transfer, at 2), and directed the other members of the conspiracy to induce the Trusts to breach the CLB and PTH contracts. As a result of the alleged conspiracy, plaintiff claims to have incurred damages in the amount of $1,466,666 – its expected compensation on the Habersham/Winterthur contract. Additionally, plaintiff seeks punitive damages against the alleged conspirators.

Count III of plaintiff's complaint refers again to the CLB and PTH contracts, and alleges that although CLB and PTH essentially resold the Halpin insurance policies under contract with plaintiff to Coventry First, the insurance companies for four of the contracted policies have refused to transfer ownership pending resolution of this dispute. Therefore, plaintiff requests this court to award specific performance of the CLB and PTH contracts with respect to the four blocked policies.

In Count IV, plaintiff makes allegations of conversion with respect to the MTH contract, which was entered into by plaintiff and MTH Trust on May 2, 2005. (am. cplt., ¶ 39). Shortly after plaintiff's receipt of the Irrevocable Special Power of Attorney and physical possession of the six MTH insurance policies, plaintiff entered into a series of agreements with National Viatical, Inc. ("NVI"), as the agent for American Pegasus Investment Management, Inc. ("API"), to resell those policies (¶¶ 117, 118). On June 24, 2005, plaintiff wired $125,757.54 to the MTH Trust for payment of one of the six policies. Thereafter, either NVI or API paid the full purchase price for all six policies directly to the MTH Trust, in the amount of $2,766,667. Plaintiff thus alleges that the MTH Trust received a duplicate payment for one of the policies, in the amount of $125,757.54. Plaintiff further alleges that the MTH Trust refuses to return the overpayment and "is holding it 'hostage' in a blatant attempt to force

Reserve to give up valuable legal rights and claims that it has against the Three Trusts" (¶ 124). Plaintiff seeks judgment against the MTH Trust in the amount of $125,757.54.

Plaintiff filed suit in this action on November 17, 2005. Thereafter, two similar suits were filed in New Jersey and both are currently pending in the District of New Jersey court. First, the Trusts filed suit alleging breach of contract, breach of covenants of good faith and fair dealing, breach of fiduciary duty, and tortious interference with prospective economic advantage. That case was filed in the Superior Court of New Jersey on December 8, 2005, and removed to the District of New Jersey. Christopher Hawks, et al v. Philip Lian, et al., No. 05-5735.

Second, Ogilvie, Gentry, Hoag, Capitol, and Seal filed suit in New Jersey on February 9, 2006, requesting a declaratory judgment that Reserve breached the CLB and PTH contracts by failing to make timely payments. Ogilvie Security Advisors, et al. v. Reserve Capital, LLC, No. 06-602. Ogilvie, et al., assert that a declaratory judgment against Reserve would eliminate Reserve's allegations against them in Illinois: "... Because Reserve Capital breached the CLB and PTH Sales Contracts and/or those contracts had been terminated, rescinded or are otherwise unenforceable, Plaintiffs could not have tortiously interfered with Reserve Capital's purported rights in the CLB and PTH Sales Contracts" (Venue defs' motion to transfer, ex. 9, ¶ 29).

After entering an expedited discovery order on January 12, 2006 (Venue defs' motion to transfer, ex. 8), in Hawks v. Lian[3], the New Jersey court set a pretrial scheduling order on March 6, 2006, for both Hawks v. Lian and Ogilvie, et al., v. Reserve Capital.

Now, defendant Halpin moves to dismiss for lack of personal jurisdiction and/or

---

[3]Plaintiff claims that the expedited discovery order has been superceded. (plf's response to venue defs' motion to transfer, at 4).

improper venue, the Trusts defendants move to dismiss for lack of personal jurisdiction and/or improper venue, or to transfer the case to the District of New Jersey, and the venue defendants move to transfer this case to the District of New Jersey.

## DISCUSSION

### Halpin's Motion to Dismiss

Defendant Halpin brings a motion to dismiss for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2), or alternatively, for improper venue pursuant to FED. R. CIV. P. 12(b)(3). We begin with assessment of personal jurisdiction.

Plaintiff carries the burden of making a *prima facie* case for personal jurisdiction. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir.1997). In considering Halpin's Rule 12(b)(2) motion we can consider evidence outside of the pleadings, including affidavits. Flag Co. v. Maynard, 376 F.Supp.2d 849, 852 (N.D.Ill.2005). We accept plaintiff's well-pleaded allegations as true, unless controverted by defendant's affidavits, and resolve any conflicts in favor of plaintiff. Transcraft Corp. v. Doonan Trailer Corp., 1997 WL 733905, *1 (N.D.Ill.1997). Plaintiff, however, must establish "proof to a reasonable probability that jurisdiction exists." Shaw v. Dow Brands, Inc., 994 F.2d 364, 366 (7th Cir.1993). For the reasons set forth below, we find that plaintiff has not met that burden.

A federal court sitting in diversity has personal jurisdiction over a non-resident defendant only if an Illinois court would have jurisdiction. Global Relief v. New York Times Co., 2002 WL 31045394, *5 (N.D.Ill.2002). A non-resident can be sued in Illinois as long as the court's jurisdiction comports with federal and state due process requirements and the Illinois long-arm statute. Transcraft Corp., 1997 WL 733905 at *2. Because the Illinois long-arm statute authorizes jurisdiction on any basis permitted by the Illinois constitution and the Constitution of the United States (735 ILCS 5/2-209(c); *id.*), we focus on a due process analysis.

Personal jurisdiction comports with due process where defendant has had minimum contacts with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" (Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement, 326 U.S. 310, 316 (1945)), and "defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). To find specific jurisdiction, defendant must have minimum contacts with Illinois to ensure that he will not be forced to litigate here solely as a result of "random," "fortuitous," or "attenuated" contacts with Illinois, or the "unilateral activity of another party or third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

Halpin avers that he did not "himself, or by directing others, transact any business, perform any actions or participate in any activities in Illinois related to the matters set forth in Plaintiff's Amended Complaint" (Halpin aff ¶ 5). Additionally, plaintiff swears that he has never contacted or communicated with any Illinois defendant in this action (¶ 6), and does not work, own business, maintain agents or employees, or regularly transact or solicit business in Illinois ( ¶ 4). Thus, defendant argues that he "took no actions whereby he could have reasonably foreseen being haled into court in Illinois," and therefore, asserting personal jurisdiction over him in Illinois, "would be unfair and unreasonable and would offend fundamental due process" (Halpin's mem. at 8).

While plaintiff does not argue that we could assert general jurisdiction over Halpin, it does argue that we can maintain specific jurisdiction pursuant to the "conspiracy theory of jurisdiction." (plf's response at 8).     Specifically, plaintiff alleges that Halpin conspired to "have the CLB and PTH Trusts materially breach their existing Contracts with Reserve ... so that the Trusts could obtain a substantially higher purchase price ...." (plf's response at 3).

Based on the "'time honored notion that the acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy'" (Textor v. Board of Regents of Northern Illinois University, 711 F.2d 1387, 1392-93 (7th Cir.1983)), the Seventh Circuit has held that the Illinois long-arm statute allows us to assert jurisdiction over a non-resident where plaintiff sufficiently alleges an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in Illinois. *Id. See also* United Phosphorus Ltd. v. Angus Chem. Co., 43 F.Supp.2d 904, 913 (N.D.Ill.1999); Zivitz v. Greenberg, 1999 WL 984397, *5 (N.D.Ill.1999). And while the evidence of the conspiracy may be direct or circumstantial (Flag Co., 376 F.Supp.2d at 855), plaintiff can sufficiently allege an actionable conspiracy only by making a *prima facie* showing of a civil conspiracy. To make such a showing, plaintiff must "(1) 'point[] to evidence showing the existence of [a] conspiracy and the defendants' knowing participation in that conspiracy'; and (2) 'allege[] specific facts warranting [an] inference that the defendant was a member of the conspiracy.'" Hollinger Int'l., Inc. v. Hollinger Inc., 2005 WL 589000, *14 (N.D.Ill.2005) (*citing* United Phosphorus Ltd., 43 F.Supp.2d 904 at 913). *See also* Kohler Co. v. Kohler Int'l, Ltd., 196 F.Supp.2d 690, 696-97 (N.D.Ill.2002); Plastic Film Corp. of America, Inc. v. Unipac, Inc., 128 F.Supp.2d 1143, 1146 (N.D.Ill.2001).

We do not require fact pleading with regard to conspiracy; allegations stating the parties involved, the conspiracy's general purpose, and the approximate date of the events is generally sufficient. Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir.2003). Because Halpin contests personal jurisdiction, however, and plaintiff attempts to establish jurisdiction under a conspiracy theory, plaintiff must set forth factual allegations to satisfy a *prima facie* conspiracy case. Plaintiff has failed to do that.

By asserting very few factual allegations against Halpin regarding his involvement in the alleged conspiracy, plaintiff has failed to make out a *prima facie* case. While the amended

complaint does claim that all of the alleged co-conspirators knew the CLB and PTH contracts were in full force and knowingly joined in an unlawful conspiracy among themselves (am. cplt., ¶¶ 83, 85), it makes specific reference to actions taken by defendant Halpin only a few times. The complaint asserts that Halpin actively encouraged the conspiracy (¶ 90) and substantially profited from it (¶ 100). Outside of those blanket statements, plaintiff's personal jurisdiction argument centers on the allegation that Halpin "gave specific instructions to Mr. Hawks that the transfer of ownership" of the life insurance policies in the CLB and PTH contracts was "to be blocked and obstructed and not to be allowed to proceed" (¶ 91). Further, plaintiff contends that Mr. Hawks complied with those instructions by placing a stop transfer on the policies (¶ 92). Because Mr. Hawks is not implicated in the conspiracy, without more detailed allegations we cannot find that plaintiff has sufficiently alleged Halpin's role in an actionable conspiracy.

Plaintiff relies solely on Mr. Lian's affidavit to set forth claims that Halpin had direct communications with the Illinois defendants (Lian aff., ¶ 7), referred clients to the Illinois defendants (¶ 24), communicated directly with defendant Hoag regarding her negotiations with Coventry First (¶ 26(e)), and directed the stop-transfer instructions placed on the CLB and PTH contracts (¶ 26(i)). Much of the affidavit, however, is conjecture and hearsay, and although the general rule is that all factual conflicts between the parties are resolved in favor of the plaintiff (Transcraft Corp., 1997 WL 733905 at *1), an affidavit based on speculation or second-hand knowledge cannot refute defendant's affidavit asserting personal knowledge to the contrary. *See* Berg-Mfg. & Sales Corp. v. Ivy/Mar Co., Inc., 1996 WL 596512, *5 (N.D.Ill.1996); Cherry Communications, Inc. v. Coastal Telephone Co., 906 F.Supp.452, 454-55 (N.D.Ill.1995) (disregarding plaintiff's affidavit because it was not based on personal information and thus considering defendant's testimony undisputed); Sfasciotti v. Copy-Plus,

<u>Inc.</u>, 1985 WL 5051, *1 (N.D.Ill.1985) ("the court declines to accept hearsay statements on important facts relating to personal jurisdiction"). The remaining allegations are not enough to support personal jurisdiction. *See* <u>United Phosphorus, Ltd.</u>, 43 F.Supp.2d at 912 ("Simply alleging that a [] defendant participated in a conspiracy and that another member of the conspiracy committed a tort in the forum state is not enough to reach the defendant who is an absent co-conspirator"). Therefore, we grant defendant Halpin's motion to dismiss for lack of personal jurisdiction.

<u>Trusts Defendants' Motion to Dismiss or Transfer</u>

The Trusts defendants move this court to dismiss the claims against them for lack of personal jurisdiction and/or improper venue. Alternatively, they petition this court to transfer venue of the case to the District of New Jersey. For the reasons set forth below, we dismiss the complaint against the Trusts for lack of personal jurisdiction.[4]

The Trusts contend that there is no personal jurisdiction over them because they have not had minimum contact with the State of Illinois and the transaction at issue did not take place in Illinois (Trusts mem. at 3). Plaintiff argues that the Trusts' "extensive use and reliance on their authorized Illinois agent, Debra Hoag, in connection with the search, negotiations, review and consummation of the Contracts that were entered into with Reserve and then breached by the Trusts" is sufficient to establish personal jurisdiction (plf's response at 2).

Under the Illinois long-arm statute we may maintain personal jurisdiction over non-resident defendants, who, "in person or through an agent," transact business within Illinois or make or perform any contract or promise substantially connected with the State of Illinois.

---

[4]The Trusts also made a motion for leave to file a reply brief. We considered their arguments and determined that they did not alter our analysis or conclusion.

735 ILCS 5/2-209(a)(1), (7).[5] Plaintiff contends that defendant Hoag, as an authorized agent of the Trusts, performed duties for the Trusts in Illinois in connection with the CLB and PTH contracts, including attempts to locate purchasers for the policies, review and comment on the contracts, and communications regarding the purchase price (plf's response at 4).

When analyzing business transactions and contracts with regard to personal jurisdiction, Illinois courts consider the following factors: (1) the person/party who initiated the contract; (2) the place where the contract was negotiated; (3) the place where the contract was entered; and (4) where substantial duties under the contract were performed. Ozonoclogy, Inc. v. Campbell, 1998 WL 704161,*4 (N.D.Ill.1998); Real Colors, Inc. v. Patel, 974 F.Supp. 645, 648-49 (N.D.Ill.1997); Goldberg v. Miller, 874 F.Supp. 874, 878 (N.D.Ill.1995). As plaintiff recognizes, to successfully assert specific jurisdiction over the Trusts, plaintiff must "not only demonstrate that defendants transacted business in Illinois, [plaintiff] must also show that its cause of action arose from defendants' transaction of business." Continental Bank N.A. v. Everett, 742 F.Supp. 508, 511 (N.D.Ill.1990). Plaintiff has failed to do that.

Although plaintiff's argument in its brief paints Hoag as a main player in negotiating and preparing the CLB and PTH contracts, the complaint reveals a different story. According to plaintiff's amended complaint, the Trusts authorized defendants Hoag and Seal to act as their agents to find a purchaser for Mrs. Halpin's life insurance policies (am. cplt., ¶ 30). Hoag, acting out of her office in Illinois, and Seal, acting out of his office in Virginia, approached Gary Brecka, the president of Life Asset Group, LLC ("LAG"), located in Florida, to assist them in finding a buyer for the policies. (¶¶ 31-32). It was LAG, however, not Hoag or Seal, who "found" and identified Reserve as a willing prospective purchaser of the policies

---

[5]The Illinois long-arm statute also provides for jurisdiction over a non-resident who commits a tort in Illinois. 735 ILCS 5/2209(a)(2). And although plaintiff's complaint includes allegations of injuries under both contract and tort law, its allegations against the Trusts (with the exception of its conversion claim against MTH Trust) and its brief, focus primarily on contract claims. Therefore, we will do the same.

(¶ 34). Thereafter, plaintiff maintains that LAG agreed with Hoag and Seal to share the compensation LAG would receive from the settlement transactions (¶ 37). According to plaintiff's complaint, upon preparation of the contracts with Lian, LAG sent copies to Hoag and Seal for their review and comment (¶ 40),[6] then either Hoag or Seal sent the copies to Mr. Hawks for execution (¶ 43).

From our reading of the complaint, which we must take as true unless controverted by defendants' affidavits, Hoag, the Trusts' Illinois agent, was minimally involved in the initiation, preparation and execution of the contracts. It was LAG who approached plaintiff about purchasing the policies, LAG was plaintiff's contact during the contracts' preparation, and LAG received the commission (which he allegedly agreed to share). Therefore, it appears that LAG initiated the contract negotiations. The actual negotiations, which from the face of the complaint apparently occurred between Lian and Brecka, had little to do with Hoag. Her review and comments appear to be peripheral to the actual negotiations.[7]

Finding that Hoag had little to do with either the contract initiation or negotiations, we turn to the place where the contracts were executed. Plaintiff argues that because Lian signed the contracts in Illinois, the contracts were executed in Illinois (see am. cplt., ex. 1, p. 6). Even if that is true, however, there are two problems with using that as a basis to assert personal jurisdiction over the Trusts. First, when assessing personal jurisdiction over defendants we consider the acts of the defendants, not the acts of the plaintiff. Ozonoclogy, Inc., 1998 WL

---

[6]In an affidavit attached to the venue defendants' motion to transfer, Hoag avers that she did not review and/or comment on the contracts, nor did she participate in the negotiations of the contracts. (venue defs' reply, ex, 2, ¶ 4). Because it was not attached to this motion, we will not take it into account at this stage.

[7]The cases cited by plaintiff in support of this argument involve a defendant's agent coming to plaintiff's place of business in Illinois (see Nat'l Gas Appliance Corp. v. AB Electrolux, 270 F.2d 472 (7th Cir.1959)), or at least directly negotiating with plaintiff (see Allerion, Inc. v. Nueva Icacos, S.A. de C.V., 283 Ill.App.3d 40 (Ill.App.Ct.1996); Burnhope v. National Mortg. Equity Corp., 208 Ill.App.3d 426 (Ill.App.Ct.1990)). In this case, plaintiff never alleges that Lian or any other representative ever directly worked with, or even met, the Illinois defendants.

704161 at *4. Lian is plaintiff's representative; defendants executed their end of the contract in Wyoming. Second, where defendants signed the contracts in a state other than Illinois, then forwarded them to plaintiff who then signed the documents in Illinois, courts in this district have found that "'this factor alone is simply not enough to tilt the balance in favor of asserting personal jurisdiction.'" United Financial Mort. Corp. v. Bayshores Funding Corp., 245 F.Supp.2d 884, 893-94 (N.D.Ill.2002) (citing Heller Fin. v. Ohio Sav. Bank, 158 F.Supp.2d 825, 829 (N.D.Ill.2001)). See also Real Colors, Inc., 974 F.Supp. at 649 ("Even if the contract was entered into when the confirmation was sent to Illinois, this element alone is not enough to establish personal jurisdiction under §§ 5/2-209(a)(1) and (7)").

Finally, we must assess where substantial duties under the contract were performed, or in this case where the contemplated performance was set to occur. Because neither of the parties to the contracts were located in Illinois, nor did plaintiff have any direct dealings with defendants' Illinois agents, the substantial duties under the contract could not have been contemplated in Illinois. Plaintiff argues that the following actions occurred in Illinois: (1) Lian's negotiations for the resale of the insurance policies with a potential purchaser in Chicago; (2) defendants Hoag, Ogilvie, and Gentry's alleged conspiracy with defendants Halpin, Capitol and Seal to induce the Trusts to breach the contracts; and (3) defendants Hoag, Ogilvie, and Gentry's negotiations with Coventry First for the purchase of the insurance policies for which plaintiff had already contracted. Such examples are insufficient to establish that substantial duties under the contract occurred in Illinois. First, Lian's negotiation for resale of the policies was a right given to plaintiff under the contract, not a required action or duty. Second, the other examples relate to the *breach* of the contract, not the *performance* of the contract. The performance involved the transfer of the policies and the payment on the transfer. Those activities were to take place primarily in Wyoming and New Jersey. While

the activities leading up to the breach of contract may have occurred in Illinois, the actual performance or intended performance of the contract had no connection to Illinois.

Based on the foregoing discussion, we find that Hoag was not doing business in Illinois under the long-arm statute's sections (a)(1) and (a)(7), with regard to the contracts at issue in this case. But the statute also allows us to find personal jurisdiction "on any other basis ... permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). As noted above, we cannot exercise jurisdiction over a non-resident where it would violate our notions of due process. Because we believe that the Trusts would not reasonably anticipate being haled into court in Illinois, we cannot exercise personal jurisdiction over them. Therefore, we grant the Trusts' motion to dismiss for lack of personal jurisdiction. We deny the Trusts' motion to dismiss for improper venue and motion to transfer as moot.

Venue Defendants' Motion to Transfer Venue

Venue defendants move this court to transfer this case to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). Under § 1404(a) we have discretion to transfer an action where the moving party can demonstrate that venue is proper in both the transferor and transferee courts, granting transfer serves the convenience of the parties and witnesses, and granting transfer serves the interests of justice. International Truck and Engine Corp. v. Dow-Hammond Trucks Co., 221 F.Supp.2d 898, 903-04 (N.D.Ill.2002).

The positions taken by the parties in this case, particularly the plaintiff, with regard to venue, are very curious. Here we have a New Jersey plaintiff who desires an Illinois forum and attempts to connect this action to Illinois based on the actions of what appear to be peripheral defendants. Those defendants, along with the Wyoming Trusts defendants, prefer to litigate in New Jersey. In fact, all of the defendants, with the exception of Halpin, have consented to jurisdiction in New Jersey. Having previously found that we lack personal

jurisdiction over Halpin and the Trusts, it is appropriate to transfer the case to plaintiff's home forum, where the actions can be consolidated and a New Jersey court can apply its own state's law. For the sake of thoroughness, we will address the factors relating to venue transfer now.

As neither party contests that venue would be proper in either venue, we assess whether transfer would serve the convenience of the parties and witnesses and would be in the interests of justice. *Id.* In making such an assessment, we consider the private interests of the parties and the public interests of the courts. *Id.*; <u>Georgouses v. NaTec Resources, Inc.</u>, 963 F.Supp. 728, 730 (N.D.Ill.1997). Specifically, we consider plaintiff's choice of forum, situs of material events, ease of access to sources of proof, availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining such attendance, and convenience of the forum to the parties. *Id.*, at 904. And finally, we must consider each forum's interest in resolving the controversy, familiarity with applicable law, and court resources and congestion. *Id.*, at 905. Defendants, as the moving party, bear the burden of demonstrating that transfer to the District of New Jersey is "'clearly more convenient.'" <u>Clearclad Coatings, Inc. v. Xontal Ltd.</u>, 1999 WL 652030, *8 (N.D.Ill.1999). For the reasons set forth below, we find that venue defendants have met that burden and we grant their motion to transfer venue.

Plaintiff's choice of forum is generally given significant weight in assessing transfer of venue. <u>Federal Deposit Ins. Corp. v. Citizens Bank & Trust Co. of Park Ridge, Ill.</u>, 592 F.2d 364, 368 (7th Cir.1979); <u>Clear Channel Outdoor, Inc. v. Rubloff Oakridge Algonquin, L.L.C.</u>, 2003 WL 22382999, *3 (N.D.Ill.2003) (*citing* <u>Vandeveld v. Christoph</u>, 877 F.Supp. 1160, 1167 (N.D.Ill.1995)). Where, as here, however, plaintiff is not a resident of the chosen forum nor has the chosen forum been significantly connected to the underlying action, plaintiff's choice of venue diminishes in value. *See* <u>Spherion Corp. v. Cincinnati Financial Corp.</u>, 183 F.Supp.2d

1052, 1058 (N.D.Ill.2002) ("The plaintiff's choice of forum is important, but this factor is given less weight 'when the plaintiff is a non-resident of the chosen forum,' or 'where the cause of action did not conclusively arise in the chosen forum'"); So-Comm, Inc. v. Reynolds, 607 F.Supp. 663, 666 (N.D.Ill.1985) ("the plaintiff's choice of forum is entitled to less consideration when he is not a resident of the forum district"); American Feeds & Livestock Co., Inc. v. Van Veldhuisen, 1986 WL 8023, *3 (N.D.Ill.1986) ("plaintiff's choice of forum has reduced value where the forum lacks any significant contact with the underlying cause of action"). Because plaintiff is not a resident of Illinois, and the underlying case is not substantially related to Illinois, plaintiff's choice of forum will be given no more weight than other factors.[8]

Plaintiff contends that a substantial number of operative facts giving rise to the contracts and alleged breach occurred in Illinois. Specifically, plaintiff points to defendant Hoag's performance of "substantial services" in attempting to locate a buyer for the insurance policies, her review and comment on the contracts, and her involvement in setting the purchase price for the contracts (plf's response at 9). Additionally, plaintiff argues that Lian's execution of the contracts while in Illinois, coupled with Hoag's Illinois-based involvement in the alleged breach of contract, establishes that Illinois, not New Jersey, was the situs of material events.

We have already determined that Hoag's involvement in the negotiation and execution of the contracts was minimal. Additionally, Hoag has entered an affidavit directly contradicting her involvement in the creation and/or negotiation of the CLB and PTH contracts. Specifically, she avers that she "did not review and/or comment" on the contracts and "did not participate in the negotiation of any of the terms or conditions" of the contracts

---

[8]Similarly, plaintiff strenuously argues that because the Illinois case was filed prior to the New Jersey case, it should be given priority. While under the first-filed doctrine the case filed first is generally favored absent sound reasons (Clipp Designs, Inc. v. Tea Bags, Inc., 996 F.Supp. 766, 769 (N.D.Ill.1998)), we have established that there are sound reasons to transfer this case. See Campbell Software, Inc. v. Kronos Inc., 1996 WL 124457, *4 (N.D.Ill.1996).

(venue defs' reply, ex. 2, ¶ 4). And although plaintiff attempts to rely on Lian's affidavit to establish Hoag's involvement in constructing the contracts and effectuating their alleged breach, much of it is based on rumor and conjecture and, therefore, cannot refute Hoag's affidavit based on her personal knowledge. Although we must accept as true those allegations that are not contradicted by Hoag's affidavit, namely, Hoag's involvement in the Coventry

 First negotiations, it is not clear that Hoag's alleged involvement in the breach is sufficient to establish that the situs of material events occurred in Illinois. Plaintiff contends, however, that neither did any substantial events underlying this action occur in New Jersey, and therefore New Jersey is not a "clearly more convenient" forum. Applying general logic, we cannot see how that can be the case. Although Lian signed the contract in Illinois, without an assertion to the contrary we can only assume that Lian, a New Jersey resident working on behalf of a New Jersey company, prepared the contracts in New Jersey (am. cplt., ¶ 38). Similarly, as plaintiff asserts that Mr. Hawks delivered an Irrevocable Special Powers of Attorney and physical possession of the policies to Reserve (¶ 48), we must assume that such documents were sent to Reserve at its principal place of business in New Jersey. Plaintiff has never argued that it negotiated or accepted the contract at any location other than its principal place of business. Nor has plaintiff asserted that it planned to forward the contracted payment from any other location. Therefore, we find that New Jersey had a significant relationship to such contracts.

We turn now to ease of access to proof and convenience to the parties and witnesses. As we understand it, the contracts were negotiated and formed by some combination of Lian in New Jersey, Hawks in Wyoming, and Brecka in Florida. None of those parties would have kept documents, communications or other evidence, in Illinois. Because evidence of the alleged breach will be at the heart of this action, and plaintiff alleges that Hoag was involved in

recruiting and negotiating the contract with Coventry First that led to the alleged breach of the contracts at issue, documents and other evidence of her communications may in fact be located in Illinois. Because it is clear that evidence and witnesses to this action are located in New Jersey and Illinois, and all over the country, ease of access to proof and witnesses is a neutral factor.

Plaintiff points to In re National Presto Industries, Inc., 347 F.3d 662 (7th Cir.2003), to support its contention that where proof, witnesses, and parties are located in different states, plaintiff's choice of forum should not be disturbed. In In re National Presto, the Seventh Circuit stated: "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff," 347 F.3d at 665. Although the court in In re National Presto refused to issue a *writ of mandamus* to overrule the district court's denial of defendant's motion to transfer, that case differs in two important respects from the case at hand. First, defendant was requesting a *writ of mandamus* from the Seventh Circuit – an extraordinary remedy granted "only upon a demonstration that the district court 'so far exceeded the proper bounds of judicial discretion as to be legitimately considered ursurpative [sic] in character or in violation of a clear and indisputable legal right, or at the very least, patently erroneous'" (*id.*, at 663). Therefore, defendant's task in persuading the court to its argument was more onerous than in the case at hand. Second, in In re National Presto, agency plaintiff's midwest regional office was located in Chicago. In this action neither plaintiff nor defendant resides in Illinois. In fact, plaintiff is contesting jurisdiction in its resident forum. Therefore, we cannot see how transfer of the case to New Jersey would greatly inconvenience plaintiff. Defendants,[9] on the other

---

[9]With the exception of defendant Halpin.

hand, have consented to jurisdiction in New Jersey and contend that such a transfer would not inconvenience them.

Finally, we note that the public interests implicated in venue selection favor transfer. First, the contracts at issue include a New Jersey choice of law provision (defs' mem., ex. 1, pp. 5, 16; defs' mem., ex. 2, pp. 5, 16). And although we are capable of applying New Jersey law under appropriate circumstances, because New Jersey courts are more practiced in the application of New Jersey contract law, the choice of law provision weighs slightly on the side of transfer. *See* divine/Whittman-Hart, Inc. v. King, 2002 WL 1611585, *9 (N.D.Ill.2002); Moore v. AT&T Latin America Corp., 177 F.Supp.2d 785, 791 (N.D.Ill.2001); Sutherland v. Cybergenics Corp., 907 F.Supp. 1218, 1223 (N.D.Ill.1995). Second, because plaintiff is a New Jersey resident, and the case will involve interpretation of New Jersey law, New Jersey has an interest in resolving the dispute and redressing injury to one of its residents. *See* Kinney v. Anchorlock Corp., 736 F.Supp. 818, 825 (N.D.Ill.1990) (noting that plaintiff's home state has an interest in providing a forum in which its resident may seek redress for their injuries).

Third, as both parties recognize, there is a benefit to a venue where related cases can be consolidated. *See* Coffey v. Van Dorn Iron Works, 796 F.2d 217, 221 (7th Cir.1986) ("related litigation should be transferred to a forum where consolidation is feasible"); divine/Whittman-Hart, Inc., 2002 WL 1611585, at *9 ("Keeping all of the defendants together in one trial is greatly preferred, presumably by all parties, and definitely by the court system"). Plaintiff argues that because defendant Halpin will contest jurisdiction in New Jersey, the cases cannot be consolidated there. We have already decided that we have no personal jurisdiction over Halpin or the Trusts, however, and therefore, it would be impossible to consolidate the pending cases in this court. As New Jersey could maintain jurisdiction over all (or more) of the defendants, the opportunity for consolidation favors transfer. Further, venue defendants

claim that the New Jersey litigation is significantly further along than the litigation in this court. And even if plaintiff is correct that the New Jersey litigation is not as advanced as defendants contend, the New Jersey court has already set a pretrial scheduling order (*see* plf's response, ex. 4), which is further along than we have come in this venue.

Based on the reasons set forth above, we grant venue defendants' motion to transfer this action to the District of New Jersey.

## CONCLUSION

For the reasons stated above, we grant Halpin's and the Trusts' motions to dismiss for lack of personal jurisdiction, without prejudice. We also grant Ogilvie, Gentry, Hoag, Capitol Financial, and Seal's motion to transfer to the District of New Jersey. All other motions are denied as moot.

JAMES B. MORAN
Senior Judge, U. S. District Court

_____ April 17 _____, 2006.